REDMANN, Judge.
A corporate trucking company and its president appeal from a judgment holding them liable for plaintiff employee’s crushed finger, fractured leg and other injuries resulting from a crate’s falling over upon him. Plaintiff also appeals from the judgment’s dismissal of his demand against the night dispatcher-supervisor who was in charge of the freight terminal at the time of the accident.
The corporate employer had previously been dismissed from the suit by final judgment based on the exclusivity of Workmen’s Compensation, La.R.S. 23:1032. The employer was not again cited and served with process or otherwise rejoined into plaintiff’s suit. The court thus had no jurisdiction, La.C.C.P. 6, to render a judgment against the corporation. We therefore annul as to the corporation.
As to the corporate president we reverse on a holding that plaintiff did not prove that his injuries were caused by any breach by the president of a personal duty to attend to the safety of this interstate corporation’s work activities; see Canter v. Koehring Co., La.1973, 283 So.2d 716.
The essential facts of the accident are that a 3,000-pound, flat crate of plate glass, standing on end lengthwise in a truck trailer, was lifted an inch or two on one end by a fork-lift which was to drag it out of the truck onto a dock while four workers attempted to keep it upright. Plaintiff testi *614 fies that the crate began to “wobble” and, rightly or wrongly believing that his strength was not equal to the task of keeping the crate upright, plaintiff and perhaps the other worker on his side let the crate go as they sought to escape its fall. Unable to escape from the trailer, plaintiff was struck by the falling crate (as was the other worker on that side of the crate). The injured co-worker testified by deposition that the fork-lift was unable to “get traction”; that its smooth wheels slipped on the surface wet from rain until they were smoking, without budging the crate; that finally the engine was raced and the forklift shot back, “throwing” the crate onto him and plaintiff (and also pushing the metal gap-bridging plate forward).
Although plaintiff and the injured coworker testified that they were instructed by defendant dispatcher-supervisor to move the crate as they did, the supervisor testified that he gave no instructions and was not at the scene but inside the office. The trial judge did not cast the supervisor in judgment. We are therefore forced to conclude that the trial judge disbelieved plaintiff’s and the injured co-worker’s testimony on that point, and we are not in a position to reject the trial court’s reasonable evaluations of credibility; Canter v. Koehring, supra. We therefore affirm the trial court’s rejection of plaintiff’s demand against that dispatcher-supervisor.
The evidence is that defendant corporation operates its trucking business in (at least) two states and that the president’s office is in Mississippi. The president testified that the corporation has a vice-president in charge of safety, who in turn testified that each terminal manager was responsible for the safe operation of his own terminal. The trial judge may have disbelieved the defense witnesses, but the absence of credible defense evidence does not constitute proof of plaintiffs case: rejection of the corporate president’s and other officers’ testimony of assignment of responsibilities does not constitute evidence that the president did not assign responsibilities to competent subordinates.
It is plaintiff’s burden to prove his case, and he does not do so by establishing that his corporate employer has a president. The law does not supply an inference that the president of an interstate corporation is personally responsible for every injury that occurs to the corporate employees unless he exculpates himself, leaving it to the credibility evaluation of a trier of fact to believe him or not when he testifies as to the corporate chain of command and delegation of responsibilities.
Plaintiff’s evidence can be accepted as proving that this corporate president knew of certain defects in the temporary substitute terminal the corporation rented when its own was destroyed shortly before construction of a new one was to be completed. Those defects included that at one edge of the loading dock a large chip or chunk of concrete was missing; the forklift had smooth tires (although the implication of this circumstance was not made clear); the metal plates used to bridge gaps between dock and truck bed did not have devices to anchor them firmly in place; the docks got wet from rain and at times from high humidity of the neighborhood. None of those defects, however, was proved to be a cause-in-fact of this accident, and therefore defendant president’s failure to remedy them was not a cause-in-fact.
Affirmed in part, annulled in part and reversed in part.